UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MEDICINE SHOPPE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:09-cv-01698 |
| | ) | |
| ANWAR YOUSUF, | ) | |
| NOREEN ANWAR, | ) | |
| DRUGSMART, INC., and | ) | |
| DRUGSMART ENTERPRISES INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Medicine Shoppe International, Inc. ("MSI") files this Complaint against Defendants Noreen Anwar, Anwar Yousuf, Drugsmart, Inc., and Drugsmart Enterprises, Inc.

### The Parties

1.      MSI is a Delaware corporation with its principal place of business located in Dublin, Ohio.

2.      Upon information and belief, Anwar Yousuf ("Yousuf") is a citizen and resident of the State of Maryland residing at 5901 Spring Leaf Court, Elkridge, Maryland 21075-5996.

3.      Upon information and belief, Noreen Anwar ("Anwar") is a citizen and resident of the State of Maryland residing at 5901 Spring Leaf Court, Elkridge, Maryland 21075-5996.

4.      Drugsmart, Inc. ("Drugsmart") is a corporation organized and existing under the laws of the state of Maryland with its principal place of business located at 1724 E. Northern Parkway, Baltimore, Maryland 21239, and a registered agent, Defendant Yousuf, at 5901 Spring Leaf Court, Elkridge, Maryland 21075-5996.

5.     Drugsmart Enterprises, Inc. ("Enterprises") is a corporation organized and existing under the laws of the state of Maryland with its principal place of business at 517 Belvedere Avenue, Baltimore, Maryland 21212 and a registered agent, Defendant Yousuf, at the same address.

6.     Yousuf and Anwar are owners and officers of Drugsmart and Enterprises.

### JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Pursuant to Mo. Rev. Stat. § 506.500, this Court has personal jurisdiction over Defendants. Specifically, Defendants, individually and as the owners or officers of Drugsmart and Enterprises, transacted business in Missouri. Defendants had numerous telephone calls with MSI's employees working at MSI's Missouri headquarters; MSI negotiated the license agreement and all other related agreements with Defendants from MSI's Missouri headquarters; the agreements discussed herein were partially performed in Missouri; all license fees and other payments were paid to MSI in Missouri; the majority of franchise support services were rendered to Defendants from MSI's Missouri headquarters; and pursuant to the terms of the parties' license agreement and related agreements, Defendants reasonably expected that any and all disputes arising out of the parties' agreements would be governed by Missouri law. Such contacts are sufficient to confer personal jurisdiction because this dispute arises out of Defendants' relationship with MSI under the agreements.

23301733\V-1

9.     Furthermore, this Court has jurisdiction over the parties to this action pursuant to § XIV(12) of the license agreement, which provides that the parties agreed to submit to the jurisdiction of the District Court for the Eastern District of Missouri.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and § XIV(12) of the New Agreement, and because a substantial part of the events giving rise to MSI's claims occurred within the Eastern District of Missouri.

**Facts**

THE MEDICINE SHOPPE® SYSTEM AND THE MARKS

11.     MSI is a national franchisor that has developed a marketing system, method of operation, and a system of training, services and assistance to its licensees for the operation of prescription pharmacies (the "Medicine Shoppe® System"). MSI also owns registered trademarks, trade names and service marks (the "Marks").

12.     Pursuant to individual license agreements, MSI allows others to use the Medicine Shoppe® System, as well as the Marks, in their operation of Medicine Shoppe® pharmacies at locations specified in the license agreements. In exchange for these and other benefits, MSI receives license fees from its licensees based on a percentage of each pharmacy's monthly gross receipts.

THE ORIGINAL LICENSE AGREEMENT AND FIRST GUARANTY

13.     On or about May 20, 2003, MSI and Drugsmart entered into their original 20-year license agreement (the "Original Agreement").[1]

14.     Under the Original Agreement, Drugsmart agreed to operate the Medicine Shoppe Pharmacy #1849 at a mutually agreeable location (the "Pharmacy").

---

[1] A true and accurate copy of the Original Agreement is attached hereto as **Exhibit 1**.

15.     Pursuant to the Original Agreement, Drugsmart agreed, among other things, to: pay MSI monthly license fees of between 2% and 5.5% of the Pharmacy's gross sales volume for the duration of the License Agreement;[2] to make monthly contributions to MSI's Marketing Program;[3] to pay interest upon any late payments "at the highest applicable legal rate for open account business credit, compounded monthly, not to exceed two percent (2%) per month;[4] and to pay MSI its costs and expenses, including attorneys' fees, incurred in bringing or defending any action in which MSI prevailed.[5]

16.     As an inducement to the execution of the Original Agreement, Anwar and Yousuf also executed a Guaranty (the "First Guaranty").[6]

17.     Under the terms of the First Guaranty, Anwar and Yousuf jointly and severally guaranteed to make payment of all fees required to be paid to MSI as set forth by the Original Agreement or under any other agreements between MSI and Drugsmart, and the performance by Drugsmart of all of the provisions of such agreements.

18.     Anwar and Yousuf further agreed to be personally bound by all covenants, obligations and commitments contained in the Original Agreement.

### THE EARLY RENEWAL ADDENDUM, NEW LICENSE AGREEMENT, AND SECOND GUARANTY

19.     On or about January 28, 2005, MSI and Drugsmart entered into a Medicine Shoppe Early Renewal Addendum ("Early Renewal Addendum"), extending the term of the Original License Agreement for approximately 10 years, up to and until November 9, 2024.[7]

---

[2] **Ex. 1** at ¶ 6(C).

[3] **Ex. 1** at ¶ 8(B).

[4] **Ex. 1** at ¶ 6(E).

[5] **Ex. 1** at ¶ 14(M).

[6] A true and accurate copy of the First Guaranty is attached hereto as **Exhibit 2**.

23301733\V-1

20.     As an inducement to the execution of the Early Renewal Addendum, MSI and Drugsmart also entered into a new Franchise License Agreement (the "New Agreement"), which supplemented the Original Agreement.[8]

21.     Pursuant to the New Agreement, Drugsmart, in addition to the promises that it made in the Original License Agreement and the Early Renewal Addendum agreed, among other things:

> a.  to pay MSI monthly license fees of 4.1% of the Pharmacy's gross receipts, as that term is defined in the New Agreement;[9]
>
> b.  to pay late charges and interest to MSI on amounts not paid when due;[10]
>
> c.  to contribute monthly to MSI's Business Development Fund in an amount no greater than 0.8% of the Pharmacy's gross sales volume;[11]
>
> d.  to reimburse MSI for any legal fees it incurs in enforcing the New Agreement or seeking redress for its breach;[12] and
>
> e.  to submit to the exclusive jurisdiction of the District Court for the Eastern District of Missouri with respect to any litigation pertaining to the New Agreement or to any aspect of the business relationship between the parties.[13]

22.     As an inducement to the execution of the New Agreement, Anwar and Yousuf also executed a Guaranty (the "Second Guaranty").[14]

23.     Under the terms of the Second Guaranty, Anwar and Yousuf jointly and severally guaranteed to make payment of all fees required to be paid to MSI as set forth by the New

---

[7] See Early Renewal Addendum, a true and accurate copy of which is attached hereto as **Exhibit 3**, at ¶ 2.

[8] A true and accurate copy of the New Agreement is attached hereto as **Exhibit 4**.

[9] **Ex. 4** at § IV, Continuing License Fees; **Ex. 3** at ¶ 3.

[10] **Ex. 4** at § IV, Payment of Fees.

[11] **Ex. 3** at § IV, Business Development Fees and Local Advertising.

[12] **Ex. 3** at § XIV(8).

[13] **Ex. 3** at § XIV(12);

[14] A true and accurate copy of the Second Guaranty is attached hereto as **Exhibit 5**.

Agreement or under any other agreements between MSI and Drugsmart, and the performance by Drugsmart of all of the provisions of such agreements.

24.    Anwar and Yousuf further agreed to be personally bound by all covenants, obligations and commitments contained in the New Agreement.

THE ACCREDITATION PARTICIPATION AGREEMENT

25.    On or about May 6, 2008, MSI entered into an Accreditation Participation Agreement with Enterprises, whereby Enterprises contracted with MSI to receive accreditation for its provision of durable medical equipment, prosthetics, orthotics and supplies for the Pharmacy.[15]

26.    Pursuant to the Accreditation Participation Agreement, Enterprises agreed, for and in consideration of the rights, privileges and benefits set out in the Accreditation Participation Agreement, among other things, to pay MSI the sum of $1,250.00.[16]

THE ACCOUNT

27.    In addition to the services already provided for under the License Agreement, the Defendants also requested that MSI furnish them with certain other inventory, services and/or merchandise (the "Inventory, Services and/or Merchandise").

28.    Such Inventory, Services and/or Merchandise, provided by MSI to the Defendants included, but was not limited to: certain business development services, certain invoicing services, certain promissory note services, certain Common Platform Program services, and certain eRX services.

29.    MSI billed Respondents for the Inventory, Services and/or Merchandise.

_____

[15] A true and accurate copy of the Accreditation Participation Agreement is attached hereto as **Exhibit 6.**
[16] **Ex. 6** at Exhibit B.

- 6 -

## THE SECURITY AGREEMENT, PROMISSORY NOTE AND LOAN GUARANTY

30.     MSI entered into a Master Loan and Security Agreement (the "Security Agreement") with Enterprises on or about October 14, 2004.[17]

31.     Pursuant to the Security Agreement, MSI extended to Enterprises a line of credit in the sum of $160,000.00 in exchange for, among other things, a security interest from Enterprises in certain collateral, including, but no limited to, all "equipment, fixtures, inventory, machinery, personal property, accounts receivable...contract rights...franchise lease and license rights, prescription files, customer lists, customer profiles, promotional brochures, mailing lists, goodwill, general intangibles and chooses in action...."[18]

32.     The parties agreed that the Security Agreement would be governed and construed in accordance with the laws of the State of Missouri.[19]

33.     On or about October 26, 2005, Yousuf, on behalf of Enterprises, executed a Promissory Note in conjunction with the execution of the Security Agreement, to the order of MSI in the principal amount of $160,000.00.[20]

34.     Pursuant to the Promissory Note, Enterprises agreed to pay interest "on the unpaid principle balance at a rate per annum equal to the lower of: (i) the maximum rate permitted by law, or (ii) three percentage points (3%) above the commercial lending rate of interest which Bank of America quotes in St. Louis, Missouri, from time to time, as its 'prime rate' on commercial loans...." [21]

---

[17] A true and accurate copy of the Security Agreement is attached hereto as **Exhibit  7**.
[18] *Id*. at §3.2.1.
[19] *Id.* at § 10.2.
[20] A true and accurate copy of the Promissory Note is attached hereto as **Exhibit 8.**
[21] *Id.*

35.     The parties agreed that the Promissory Note would be construed and enforced in accordance with the laws of the State of Missouri.[22]

36.     Payment of the Security Agreement and Promissory Note was secured by a guaranty executed by Yousuf and Anwar (the "Loan Guaranty").[23]

37.     The parties agreed that the Loan Guaranty would be construed in accordance with and governed by the laws of the State of Missouri.[24]

### DEFENDANTS' BREACH OF THE ORIGINAL AGREEMENT, NEW AGREEMENT, FIRST AND SECOND GUARANTIES AND ACCREDITATION PARTICIPATION AGREEMENT

38.     MSI has performed all of its obligations under the Original Agreement, the New Agreement, the First and Second Guaranties, and the Accreditation Participation Agreement.

39.     Meanwhile, Defendants have failed to uphold their obligations under the Original Agreement, the New Agreement, the First and Second Guaranties, and the Accreditation Participation Agreement.

40.     Defendants have failed to make payments of license fees, failed to make payments of business development fees, failed to make payments of national marketing fees, failed to pay amounts due under the Accreditation Participation Agreement, and failed to pay other billable amounts chargeable to Defendants.

41.     Defendants owe MSI at least $130,680.01 in past due license fees, at least $32,627.66 for past due National Marketing and Business Development fees (collectively, "Marketing Fees"), and at least $1,445.46 under the Accreditation Participation Agreement, including interest on all amounts.

---

[22] *Id.*

[23] A true and accurate copy of the Loan Guaranty is attached hereto as **Exhibit 9.**

[24] *Id.*

42.     Defendants' actions and inactions constitute material breaches of the respective Agreements.

### DEFENDANTS' BREACH OF SECURITY AGREEMENT, PROMISSORY NOTE AND LOAN GUARANTY

43.     MSI has furthermore performed all of its obligations under the Security Agreement, Promissory Note and Loan Guaranty.

44.     Meanwhile, Enterprises, Yousuf and Anwar have failed to uphold their obligations under the Security Agreement, Promissory Note and Loan Guaranty.

45.     Pursuant to Section 8 of the Security Agreement, Default occurs and the security interest becomes "immediately enforceable" when the Borrower, "fails to pay when due any amount owing by the Borrower to MSI" or fails to fulfill other obligations to MSI and does not cure the default within 10 days after receiving notice of same.[25]

46.     Here, Defendants have failed to comply with the Original Agreement, the New Agreement, the First and Second Guaranties, and the Accreditation Participation Agreement.

47.     Moreover, pursuant to the Loan Guaranty, Yousuf and Anwar are liable under the Security Agreement and Promissory Note.[26]

48.     MSI has been damaged, and is entitled to the entire outstanding obligation of the Promissory Note, including interest, which is currently $126,443.29.  This amount continues to accrue.

49.     Enterprises', Yousuf's and Anwar's actions and inactions constitute material breaches of the Security Agreement, the Promissory Note and the Loan Guaranty.

---

[25] **Ex. 7** at § **8.**
[26] **Ex. 9.**

## FAILURE TO PAY ON ACCOUNT

50.     In addition to past due license fees, Marketing Fees, amounts due under the Accreditation Participation Agreement, and amounts due pursuant to the Security Agreement, the Promissory Note, and the Loan Guaranty, Defendants owe MSI for certain fees for the Inventory, Services and/or Merchandise.

51.     Defendants requested that MSI furnish them with the Inventory, Services and/or Merchandise.

52.     MSI provided the Inventory, Services and/or Merchandise to Defendants.

53.     MSI billed Defendants for the Inventory, Services and/or Merchandise.

54.     The charges for the Inventory, Services and/or Merchandise were fair and reasonable.

55.     Defendants have failed to pay amounts due for the Inventory, Services and/or Merchandise (and late charges on the same), which amounts approximate $16,375.97, including interest.

### Claims

### COUNT I — BREACH OF THE ORIGINAL AGREEMENT, NEW AGREEMENT AND EARLY RENEWAL ADDENDUM (Against Drugsmart)

56.     The allegations set forth in Paragraphs 1 through 55 are hereby incorporated by reference.

57.     MSI entered into the Original Agreement, the Early Renewal Addendum, and the New Agreement with Drugsmart.

58.     The Original Agreement, the Early Renewal Addendum, and the New Agreement required that Drugsmart among other things, timely and fully pay license fees, Marketing Fees, and other amounts due to MSI thereunder.

- 10 -

59.     Drugsmart has materially breached the Original Agreement, the Early Renewal Addendum, and the New Agreement by failing to pay MSI license fees in the amount of at least $130,680.01 and failing to pay Marketing Fees in the amount of at least $32,627.66.

60.     For the aforementioned reasons, Drugsmart is in material breach of the License Agreement.

WHEREFORE, MSI demands a judgment against Drugsmart for past due license fees and Marketing Fees, in an amount to be determined at trial, but in no event less than $163,307.67, together with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

### COUNT II — BREACH OF ACCREDITATION PARTICIPATION AGREEMENT
### (Against Enterprises)

61.     The allegations set forth in Paragraphs 1 through 60 are hereby incorporated by reference.

62.     MSI entered into Accreditation Participation Agreement with Enterprises.

63.     The Accreditation Participation Agreement required that Enterprises pay MSI the sum of $1,250.00, not including interest on any past due amounts.

64.     Enterprises has materially breached the Accreditation Participation Agreement by failing to pay MSI the fees due thereunder.

65.     Therefore, Enterprises is in material breach of the Accreditation Participation Agreement.

WHEREFORE, MSI demands a judgment against Enterprises for past due Accreditation Participation Agreement fees, in an amount to be determined at trial, but in no event less than $1,445.46 together with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

- 11 -

### COUNT III — SUIT ON ACCOUNT
### (Against Anwar, Yousuf, Drugsmart, and Enterprises)

66.     The allegations set forth in Paragraphs 1 through 65 are hereby incorporated by reference.

67.     In addition to providing all of its services under the Original Agreement, the New Agreement, the First and Second Guaranties, the Accreditation Participation Agreement, the Security Agreement, the Promissory Note and the Loan Guaranty, MSI provided to the Defendants, on account, the Inventory, Services and/or Merchandise.

68.     The Inventory, Services and/or Merchandise were provided to the Defendants at their instance and request.

69.     MSI billed the Defendants for the Inventory, Services and/or Merchandise.

70.     The charges for the Inventory, Services and/or Merchandise were fair and reasonable.

71.     The Defendants have refused and continue to refuse to pay for the Inventory, Services and/or Merchandise, despite that demand has been made upon the Defendants for payment of the aforesaid sums due and owing to MSI.

72.     MSI has performed all conditions precedent to the enforcement and collection of this account.

73.     As a direct and proximate result of the Defendants' failure and refusal to pay for fees due for the Inventory, Services and/or Merchandise, MSI has been damaged in the sum of at least $16,375.97.

WHEREFORE, MSI demands a judgment against Defendant in an amount to be determined at trial, but in no event less than $16,375.97 for unpaid fees for the Inventory,

Services and/or Merchandise, together with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

## COUNT IV — BREACH OF SECURITY AGREEMENT, PROMISSORY NOTE AND LOAN GUARANTY
### (Against Anwar, Yousuf and Enterprises)

74.     The allegations set forth in Paragraphs 1 through 73 are hereby incorporated by reference.

75.     Pursuant to Section 8 of the Security Agreement, Default occurs and the security interest becomes "immediately enforceable" when the Borrower, "fails to pay when due any amount owing by the Borrower to MSI" or fails to fulfill other obligations to MSI and does not cure the default within 10 days after receiving notice of same.

76.     Pursuant to the Original Agreement, the New Agreement, the First and Second Guaranties, the Accreditation Participation Agreement, and pursuant to their agreement to pay MSI for the Inventory, Services and/or Merchandise, Defendants, either jointly or severally, are obligated to pay MSI certain fees.

77.     MSI has therefore been damaged, and is entitled to the entire outstanding obligation of the Promissory Note, plus all interest due thereon.

78.     Therefore, Enterprises is in material breach of the Security Agreement and Promissory Note.

79.     Moreover, pursuant to the Loan Guaranty, Yousuf and Anwar are liable under the Security Agreement and Promissory Note.

WHEREFORE, MSI demands a judgment against Defendants in an amount to be determined at trial, but in no event less than $126,443.29 for past due Security Agreement, Promissory Note and Loan Guaranty fees, together with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

23301733\V-1

## COUNT V — BREACH OF GUARANTIES
### (Against Anwar and Yousuf)

80.     The allegations set forth in Paragraphs 1 through 79 are hereby incorporated by reference.

81.     As an inducement to the execution of the Original Agreement, Anwar and Yousuf executed the First Guaranty, and as an inducement to the execution of the New Agreement, they executed the Second Guaranty (together with the First Guaranty, the "Guaranties").

82.     The Guaranties required that Anwar and Yousuf be personally bound by, and personally liable for, each and every provision in the Original Agreement, the New Agreement, and any other agreement between Drugsmart and MSI.

83.     Under the terms of the Guaranties, Anwar and Yousuf also agreed to render any payment or performance required, if another one of the Defendants failed to do so.

84.     Anwar and Yousuf have failed to cure defaults under the Original Agreement, the New Agreement, the First and Second Guaranties, and the Accreditation Participation Agreement, along with the Security Agreement, the Promissory Note, and the Loan Guaranty, and to make other payments owed to MSI.

85.     As a result of Anwar and Yousuf's failure to comply with their obligations under the Guaranties, namely, the payment of all liabilities owed by Defendants to MSI, Anwar and Yousuf are in material breach of the Guaranties.

WHEREFORE, MSI demands a judgment against Defendants in an amount to be determined at trial, but in no event less than $307,572.39 for past due license fees and Marketing Fees, Accreditation Participation Agreement fees, Security Agreement, Promissory Note and Loan Guaranty fees, plus unpaid fees for the Inventory, Services and/or Merchandise, together

23301733\V-1

Case 4:09-cv-01698-RWS   Document 11   Filed 12/17/09   Page 15 of 16

with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

**COUNT VI — UNJUST ENRICHMENT**
**(Against Anwar, Yousuf, Drugsmart, and Enterprises)**

86.     The allegations set forth in Paragraphs 1 through 85 are hereby incorporated by reference.

87.     Pursuant to the Original Agreement, the New Agreement, the First and Second Guaranties, the Accreditation Participation Agreement, the Security Agreement, the Promissory Note, and the Loan Guaranty, and pursuant to their agreement to pay MSI for the Inventory, Services and/or Merchandise, Defendants, either jointly or severally, are obligated to pay MSI certain fees, as previously stated (the "Fees").

88.     Despite their obligation to do so, Defendants have failed to pay these required Fees.

89.     As of the filing date of this Complaint, Defendants have received a benefit from MSI for the use of the Medicine Shoppe® System and the MSI Marks without paying reasonable compensation, including past due Fees.

90.     This failure to compensate MSI constitutes unjust enrichment and has damaged MSI in an amount not less than $307,572.39 together with interest, costs and attorneys' fees.

WHEREFORE, MSI demands a judgment against Defendants in an amount to be determined at trial, but in no event less than $307,572.39 for past due license fees and Marketing Fees, Accreditation Participation Agreement fees, Security Agreement, Promissory Note and Loan Guaranty fees, plus unpaid fees for the Inventory, Services and/or Merchandise, together with interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

- 15 -

2330173311V-1

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By: /s/ Sarah E. S. Carlson
    Stephen J. O'Brien, #27146
    Michael M. Godsy, # 66305
    Sarah E. S. Carlson, #516939
    Richard E. Finneran, #5223791
    One Metropolitan Square, Suite 3000
    St. Louis, MO 63102
    (314) 241-1800
    Fax: (314) 259-5959

*Attorneys for Plaintiff Medicine Shoppe International, Inc.*

## Certificate of Service

The undersigned counsel hereby certifies that on the 17th day of December 2009, the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

    Stephen B. Evans, Esq.
    The Evans Partnership
    8000 Maryland Avenue
    Suite 640
    St. Louis, MO 63105
    *Attorney for Defendants*

                /s/ Sarah E. S. Carlson

23301733\V-1